**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

SDF FUNDING LLC and STUART D. )
FELDMAN, derivatively on behalf of )
FLASHPOINT TECHNOLOGY, INC., )
                       )
         Plaintiffs, )
                       )
      v. )    C.A. No. 2017-0732-KSJM
                       )
STANLEY B. FRY, EDWARD D. )
HERRICK, ROSS BOTT, CYRUS W. )
GREGG, JARED FRY, RYAN C. FRY, )
and MAGDALENA RAMOS, )
                       )
         Defendants, )
      and )
FLASHPOINT TECHNOLOGY, INC., )
         Nominal Defendant. )

**ORDER DENYING APPLICATION TO CERTIFY INTERLOCUTORY APPEAL**

1. The plaintiffs have applied for certification of an interlocutory appeal from the portion of the memorandum opinion dated May 13, 2022 (the "Memorandum Opinion") holding that Plaintiff Stuart Feldman lacks standing to pursue derivative claims because he never held stock in Nominal Defendant Flashpoint Technology, Inc. ("Flashpoint").[1] Although the Memorandum Opinion resolved a substantial issue of material importance, in the court's view, the benefits of interlocutory appeal do not outweigh the costs. This Order therefore denies the application to certify interlocutory appeal.

---

[1] C.A. No. 2017-0732-KSJM, Docket ("Dkt.") 187 ("Mem. Op.").

2. Section 327 of the Delaware General Corporation Law requires a plaintiff pursuing a derivative claim to hold stock in the corporation at the time of the alleged wrong.[2] The plaintiffs in this case are Feldman and his wholly owned subsidiary, SDF Funding LLC ("SDF"). Mid-way through the period relevant to this litigation, Feldman transferred his indirect interests in Flashpoint from another wholly owned LLC to SDF. When defending against a motion for summary judgment, the plaintiffs did not dispute that the contemporaneous ownership requirement of Section 327 deprived SDF of standing to pursue derivative claims as to actions that occurred before SDF obtained stock. Instead, the plaintiffs argued that the court should "look through" the LLCs and grant standing to Feldman as the sole owner of the LLCs under the equitable standing doctrine. The Memorandum Opinion rejected this argument.

3. Supreme Court Rule 42 permits certification of interlocutory appeal when "the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[3] If the "substantial issue" requirement is met, this court will then analyze eight factors concerning whether "there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal."[4] Rule 42 cautions that "[i]nterlocutory appeals should be exceptional, not routine, because they

---

[2] 8 *Del. C.* § 327 (providing that "[i]n any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which such stockholder complains or that such stockholder's stock thereafter devolved upon such stockholder by operation of law").

[3] Supr. Ct. R. 42(b)(i).

[4] *Id.* 42(b)(ii); *see id.* 42(b)(iii)(A)–(H).

disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[5] This language of Rule 42 serves as an interpretive principle, requiring that the court interpret the factors such that interlocutory appeals are the exception and not routine.[6]

4.  The Memorandum Opinion resolved the issue of standing, which qualifies as a substantial issue of material importance.[7] The parties agree on this point.[8]

5.  Because the substantial-issue requirement is satisfied, the analysis turns to whether there are substantial benefits outweighing the costs of an interlocutory appeal.[9] Rule 42 supplies eight factors to consider when conducting this balancing analysis.[10] The plaintiffs rely on only four of the Rule 42 factors—(A), (B), (C), and (H). The plaintiffs effectively concede that the other four factors do not weigh in favor of certifying

---

[5] *Id.* 42(b)(ii).

[6] *See also id.* 42(b) (stating that "[i]f the balance is uncertain, the trial court should refuse to certify the interlocutory appeal"); Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 18.04[c] (2d ed. 2021).

[7] *See WMI Liquid. Tr. v. XL Specialty Ins. Co.*, 2013 WL 4520982, at *1 (Del. Super. Aug. 23, 2013) (holding that "[w]hether a [p]laintiff has standing" is a classic "determination of a substantial issue . . . under Rule 42(b)"); *see also Gentile v. Rossette*, 2005 WL 3272361, at *2 (Del. Ch. Nov. 21, 2005) (noting that "whether the Plaintiffs have standing to pursue their share dilution claim" constituted a substantial issue under Rule 42(b)).

[8] *See* Dkt. 190, Pls.' Emergency Appl. For Certification of Interlocutory Appeal ("Pls.' Appl.") at 3; Dkt. 191, Defs.' Opp'n to Pls.' Appl. For Certification of Interlocutory Appeal ("Defs.' Opp'n") at 3.

[9] *See* Supr. Ct. R. 42(b)(ii); *id.* 42(b)(iii)(A)–(H).

[10] *Id.* 42(b)(iii).

interlocutory appeal by failing to advance arguments to that effect in their application.  Of the four factors on which the plaintiffs rely, only one provides clear support.

6.      Factor (A), which asks whether "[t]he interlocutory order involves a question of law resolved for the first time in this State,"[11] does not support certification.  It is true that the plaintiffs urged a novel application of the equitable standing doctrine, and that the court took the argument seriously, going so far as to request supplemental briefing on the matter.  Still, the Memorandum Opinion did not adopt the plaintiffs' novel argument nor expand the law in the direction urged by the plaintiffs.  The outcome of this aspect of the Memorandum Opinion—that a party who does not own stock in a solvent corporation lacks standing to pursue derivative claims on its behalf—should not surprise anyone.  Effectively, the plaintiffs' argument is that the Factor (A) inquiry should focus more on the creativity of the rejected argument, as opposed to the novelty of the legal holding.  But such a focus would create perverse incentives to develop attenuated arguments to support certification of interlocutory appeal.  A better interpretation of Factor (A) would focus on the application of law, including whether the decision at issue broke new ground.  In this case, the Memorandum Opinion declined to do so.

7.      Factor (B), which asks whether "[t]he decisions of the trial courts are conflicting upon the question of law,"[12] does not support certification.  The plaintiffs point

---

[11] *Id.* 42(b)(iii)(A).

[12] *Id.* 42(b)(iii)(B).

to several cases that they say are in conflict with aspects of the Memorandum Opinion, but none are.

8. First, the plaintiffs challenge the Memorandum Opinion's conclusion that the "complete failure of justice" standard is not met where other potential parties have standing to challenge the same harm, even if they are unwilling to do so. They argue that this conclusion directly conflicts with other trial court decisions. Yet the plaintiffs' citations on this point range from a case that specifically contradicts their argument[13] to a case that does not concern equitable standing at all.[14] In reality, there is no conflict.[15]

9. Second, the plaintiffs argue that the Memorandum Opinion stands in conflict with *North American Catholic Educational Programming Foundation, Inc. v. Gheewalla*,

---

[13] *See Kalisman v. Friedman*, 2013 WL 1668205, at *6 (Del. Ch. Apr. 17, 2013) (interpreting *Schoon v. Smith*, 953 A.2d 196 (Del. 2008), as "holding that there was no need for director derivative standing on the facts presented because the stockholder that had nominated the director was *able* to sue" (emphasis added)). The defendants correctly point out that "'[a]ble' is not the same as 'willing,'" Defs.' Opp'n at 7, rendering *Kalisman* in line with the Memorandum Opinion's holding that "where other avenues for relief exist for the corporation, even if only theoretical, extending the doctrine of equitable standing is unnecessary." Mem. Op. at 18.

[14] *See In re Dole Food Co., Inc. S'holder Litig.*, 2015 WL 5052214, at *43 n.36 (Del. Ch. Aug. 27, 2015) (considering whether a fiduciary breached his fiduciary duty by sharing information with an affiliated stockholder and its advisors).

[15] The plaintiffs seem to fault the court for failing to grant the plaintiffs' counsel leave to seek other potential plaintiffs, but this is an odd argument—leave was never required and was thus never an impediment. Plus, by the time of supplemental briefing, the plaintiffs' counsel had moved past this argument. With supplemental briefing, the plaintiffs submitted a declaration from counsel suggesting—based on a passive market check of sorts and interactions with two stockholders—that they were unlikely to find a replacement plaintiff. *See* Dkt. 172 ¶¶ 4–8. In any event, and in my view, none of this is relevant, because the failure-of-justice standard calls for a theoretical analysis concerning whether classes of residual claimants would have standing to pursue claims on behalf of the corporation, not a survey of whether those with standing would be willing to sue.

5

which extended derivative standing to creditors of insolvent corporations.[16]  Although the plaintiffs' point is that *Gheewalla* did not expressly require a "complete failure of justice," that case does not support an extension of equitable standing to Feldman.  Unlike a creditor, Feldman lacks a direct interest that could replace Flashpoint stockholders as a residual owner of Flashpoint's assets.[17]

10.    Third, the plaintiffs cite to cases that they describe as being "in tension" with the Memorandum Opinion declining to extend equitable standing to Feldman.  Of the five cases cited by the plaintiffs, four did not involve the issue of equitable standing at all.[18]  The fifth case, *Boulden v. Albiorix, Inc.*, involved an unusual set of facts.[19]  There, plaintiff Boulden owned a minority interest in the nominal defendant Albiorix, Inc. through two intermediate entities.  Specifically, Boulden owned a minority interest in OCI, an LLC which wholly owned Iapetus B.V., which wholly owned Albiorix.  The fiduciaries who

---

[16] Pls.' Appl. at 8 (citing to 930 A.2d 92, 101–02 (Del. 2007)).

[17] Mem. Op. at 15.  In any event, *Gheewalla* is consistent with the "complete failure of justice" standard as interpreted by the Memorandum Opinion.  As the *Gheewalla* court explained, "[w]hen a corporation is insolvent, . . . its creditors take the place of the shareholders as the residual beneficiaries of any increase in value."  930 A.2d at 101.  Thus, like stockholders of a solvent corporation, creditors of an insolvent corporation are uniquely situated and incentivized to pursue claims on behalf of the corporation.  *See also Quadrant Structured Prods. Co., Ltd. v. Vertin*, 115 A.3d 535, 549, 554 (Del. Ch. 2015) (building on *Gheewalla* and citing approvingly to the complete-failure-of-justice standard).

[18] *See* Pls.' Appl. at 10–12 (citing the following cases, none of which involved the issue of equitable standing: *Morris v. Spectra Energy P'rs (DE) GP, LP*, 246 A.3d 121 (Del. 2021); *Levitt Corp. v. Off. Depot, Inc.*, 2008 WL 1724244 (Del. Ch. Apr. 14, 2008); *In re IAC/InterActive Corp.*, 948 A.2d 471 (Del. Ch. 2008); *In re NVF Co. Litig.*, 1989 WL 146237 (Del. Ch. Nov. 22, 1989)).

[19] 2013 WL 396254 (Del. Ch. Jan. 31, 2013), as revised (Feb. 7, 2013).

allegedly breached their duties to Albiorix also comprised the board of Iapetus and were named defendants in the lawsuit. For this reason, Boulden argued that the only stockholder of Albiorix was not a viable derivative plaintiff, and that he should be granted equitable standing to pursue the claims.

11. The *Boulden* court rejected Boulden's plea for equitable standing, reasoning that the company's "interests . . . could be protected by non-party OCI."[20] The plaintiffs here argue that, by recognizing that OCI could protect Albiorix, the court recognized that OCI would have had equitable standing to pursue derivative claims on behalf of Albiorix. The plaintiffs further contend that OCI in *Boulden* is like Feldman here—a 100% owner of the stockholder of record, who should be granted equitable standing. But Boulden could just as easily stand for the conclusion that OCI did not require equitable standing. Rather, as 100% owner of Iapetus, OCI had the power to cause Iapetus to file a derivative suit on behalf of Albiorix. By contrast, in this case, SDF is not a 100% owner of Flashpoint and lacks such power. Feldman here is like the minority owner Boulden, and thus Feldman's request for equitable standing should be similarly denied.

12. Factor (C), which asks whether "[t]he question of law relates to the constitutionality, construction, or application of a statute of this State, which has not been, but should be, settled by this Court in advance of an appeal from a final order,"[21] supports certification. The defendants do not meaningfully dispute this point.[22] They argue that

---

[20] *Id.* at *17.

[21] Supr. Ct. R. 42(b) (iii)(C).

[22] *See* Defs.' Opp'n at 12–13.

"the 'constitutionality' or 'construction' of Section 327 is not at issue here," which is true. But Factor (C) also asks whether "[t]he question of law relates to the . . . *application* of a statute of this State,"[23] and the "application" of Section 327 is unquestionably at issue.

13. Factor (H), which asks whether "[r]eview of the interlocutory order may serve consideration of justice,"[24] is at best neutral. As to this factor, the plaintiffs argue that they began investigating potential misconduct at Flashpoint in 2015, sent four Section 220 requests between 2015 and 2016, and filed their initial complaint in October 2017.[25] Extensive discovery ensued in 2018 and 2019, resulting in the plaintiffs filing an amended complaint adding additional claims in December 2020.[26] Having spent seven years investigating and litigating on behalf of injured stockholders, the plaintiffs are of the view that allowing a motion for summary judgment filed in 2021 to derail the bulk of their claims "would be a miscarriage of justice."[27] They further believe that they would benefit from an interlocutory appeal that clarifies whether "90% of their damages can be sustained on a derivative standing question of first impression."[28] No one can fault this logic.

14. Yet, if the allocation of plaintiffs' resources is a consideration under Factor (H), then so too is the allocation of defense and judicial resources. And permitting

---

[23] Supr. Ct. R. 42(b)(iii)(C) (emphasis added).

[24] *Id.* 42(b)(iii)(H).

[25] Memo Op. at 13; *see also* Dkt. 1.

[26] Memo Op. at 13; *see also* Dkt. 84.

[27] Pls.' Appl. at 14.

[28] *Id.* at 13.

interlocutory appeal would require extensive judicial and defense resources in a potentially inefficient detour from a path to final resolution.

15. The plaintiffs cite to *In re Terraform Power, Inc. Stockholders Litigation*, where this court certified interlocutory appeal in part based on Factor (H), but that case is distinguishable.[29] In granting certification in *Terraform*, Vice Chancellor Glasscock did find that Factor (H) weighed in favor of granting certification, and that a successful appeal would "avoid substantial useless effort" of litigation by parties who lack standing, but that was against the backdrop of "law that appears to be in a state of flux."[30] The driving factor in certifying *Terraform* was a need for clarity concerning the then-prevailing doctrine of *Gentile v. Rosette*.[31] No similar need for clarity in Delaware law calls out for interlocutory appeal here. *Terraform* thus does not aid the plaintiffs' application.

16. On balance, in my view, the support of one of the eight factors does not warrant certification of interlocutory appeal under the circumstances of this case. The plaintiffs' request for certification of interlocutory appeal pursuant to Supreme Court Rule 42 is therefore DENIED.

/s/ Kathaleen St. J. McCormick
Chancellor Kathaleen St. J. McCormick
Dated: June 16, 2022

---

[29] 2020 WL 6889189, at *1 (Del. Ch. Nov. 24, 2020).

[30] *Id.*

[31] *Id.*

9